## Webster & Atlas National Bank, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 42285.   Promulgated February 17, 1930.

*A. T. Wilkinson, C. P. A.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

SMITH: The petitioner alleges error on the part of the respondent in disallowing the deduction of bad debts in the amount of $42,000. There are three separate items involved: one for $28,000, one for $10,000, and one for $4,000. At the hearing the respondent agreed to the deduction of the $4,000 item, representing the debt of the Chandler & Patten Co., and the petitioner withdrew its contention with respect to the $10,000 item, representing the debt of the United States Worsted Co. There remains for our determination the question of the deductibility in 1925 of the $28,000 item, representing a part of the indebtedness of the Brightwood Manufacturing Co.

The evidence shows that the amount in question was charged off in the petitioner's books on December 31, 1924. The company was indebted to the petitioner at that time in the amount of $144,000. The charge-off of $28,000 of the indebtedness was indicated by the notation in red ink on the loan card upon which the petitioner kept a complete record of the company's loan " Chgd. to P & L 28,000." The petitioner's president testified that the charge-off was the result of a careful analysis by the petitioner of the company's financial condition and business outlook at that time. His testimony was in part as follows:

The Member: How did you come to charge off $28,000; how did you determine that would be the amount to which the account should be written down?

The Witness: In analyzing the condition of the company at that time, I felt that there was a loss in that amount.

The Member: And was it your expectation the balance would be collected?

The Witness: I thought there was a loss of at least that amount.

\* \* \* \* \* \* \*

Q. How did you arrive at this figure of $28,000; what was in your mind; how did you arrive at it; why did you not take $18,000 or $38,000?

A. From an analysis of the statement of the condition of the company as of November 29, 1924, together with the information which we had and from our experience and general knowledge of this particular situation, the general condition indicated that there was probably a loss there of about twenty per cent of the note.

Q. So, from all the information you had at that particular time, including these reports, and your general knowledge of the industry in New England, was the balance you would collect on, but you would lose the $28,000?

A. That was the conclusion at that time, that we would lose at least $28,000.

The company had operated upon a losing basis during the calendar year 1924 and had sustained an operating deficit for that year amounting to $116,567.91. Its current liabilities as shown by its balance sheet as of November 29, 1924, exceeded its current assets by the amount of $305,198.49. The petitioner at that time was thoroughly acquainted with the affairs of the company, being one of several creditors who were receiving financial reports on the com-

pany and advising with its officers as to matters of management. The evidence indicates that the charge-off at December 31, 1924, was made by the petitioner of its own volition and upon its own judgment and not by direction of any banking official, either of the Commonwealth of Massachusetts or the Federal Government. The evidence does not show that there was any charge-off made in the petitioner's books with respect to the Brightwood Manufacturing Company's indebtedness during 1925. Upon this point the petitioner's president further testified as follows:

Q. Now, that card record there, will you please examine it and tell me whether or not there was any charge-off in this account at any time during the year 1925?
A. No, sir.
Q. There was not?
A. No, sir.
Q. The next charge-off, as you related, after that one of December 31, 1924, was June 30, 1927, of $10,000, is that correct?
A. Yes, sir.

*       *       *       *       *       *       *

Q. Would you say that between the first and second charge-off, the banks that had been loaning money to this concern were interested in trying to save them and see them come out all right in the end?
A. Yes, sir.
Q. Therefore, would you say that, by reason of what the cards show there, you had made no definite decision in your mind you would lose anything else until you made the next charge-off?
A. I think that is correct, sir.

Under these circumstances it seems to us that the deduction of the $28,000 item should have been claimed in 1924 and that it is allowable, if at all, in that year when the debt in part was actually ascertained to be worthless and charged off in the petitioner's books.

The facts here are materially different from those in *Sonora Bank & Trust Co.*, 7 B. T. A. 66, where we allowed the deduction of debts which were tentatively ascertained to be worthless by an officer of the petitioner bank in a prior year and were charged off, with the approval of the directors, within the taxable year. We have consistently held that the ascertainment of worthlessness, by those with authority to act for the taxpayer, within the taxable year is the essential requirement of the statute and that the charge-off must occur substantially as of the date of the ascertainment of worthlessness. See *Mason Machine Works Co.*, 3 B. T. A. 745; *George H. Fraser*, 6 B. T. A. 997; *First National Bank, Danville, Ind.*, 11 B. T. A. 671; *St. Joseph Valley Bank*, 15 B. T. A. 185.

The Revenue Act of 1924, section 234, permits a taxpayer to deduct in part or in whole either the specific bad debts ascertained to be worthless and charged off within the taxable year, or, in the discretion of the Commissioner, a reasonable addition to a reserve for

bad debts. Since the evidence does not show that the petitioner maintained a reserve for bad debts during the years under consideration, it is entitled to a deduction in 1925 of only the debts ascertained to be worthless and changed off within that year. With respect to the amount in dispute, the petitioner has not complied with the requirements of the statute and the deduction must be denied.

*Judgment will be entered under Rule 50.*